# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

| | | |
|---|---|---|
| BRANDI POWERS on Behalf of Herself And All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) | |
| v. | ) | CAUSE NO. 1:08-cv-208-PPC |
| | ) | |
| CENTENNIAL COMMUNICATIONS CORP., | ) ) | |
| Defendant. | ) ) | |

## OPINION AND ORDER

Plaintiff Brandi Powers seeks reconsideration of the May 18, 2009, Order granting Defendant Centennial Communications Corporations' Motion for Judgment on the Pleadings and Denying Powers' Motion to Certify Question to State Court. [DE 68]. That order dismissed some of Powers' state claims, those brought pursuant to the Indiana Wage Payment Statute. It did not touch upon the remaining state claims or the federal claims brought under the Fair Labor Standards Act ["FLSA"]. The Wage Payment Statute claims were dismissed because the statute exempts "salaried employees who are eligible for overtime under the FLSA." I.C. § 22-2-5-1.1. The exemption applied to Powers, and she sought to save her claims by challenging the statute under the Privileges and Immunities clause of the Indiana Constitution. The May 18 Order rejected her constitutional argument, as well as her request to certify the question to the Indiana Supreme Court.

A motion to reconsider is appropriate where: "(1) the court has patently misunderstood a party; (2) the court has made a decision outside the adversarial issues presented to the court by

the parties; (3) the court has made an error not of reasoning but of apprehension; (4) there has been a controlling or significant change in law since the submission of the issues to the court; or (5) there has been a controlling or significant change in the facts since the submission of the issue to the court." *Orange v. Burge*, 451 F. Supp. 2d 957, 961 (N.D. Ill. 2006) (*citing Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990)). Motions for reconsideration are not vehicles for "rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale De Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996).

Powers does not specify under what basis for reconsideration she deserves relief. She puts forward no changes in fact or law. What she does do is take issue with the May 18 Order's articulation of classifications created by the challenged Wage Payment Statute. She also contests the order's application of the two-prong test laid out in *Collins v. Day*, 644 N.E.2d 72, 80 (Ind. 1994), used to determine compliance with the Indiana Privileges and Immunities clause. So it appears she is possibly claiming an error of apprehension, though really it seems more of a challenge to the order's reasoning, which is not a proper grounds for reconsideration. Powers also raises arguments that were not raised in the initial motion, which is similarly inappropriate. In any event, the challenge to the May 18 Order's reasoning and the new arguments do not change the original conclusion that the Wage Payment Statute does not violate the Privileges and Immunities clause, and so her motion for reconsideration fails.

The May 18 Order described the Wage Payment Statute as treating differently the classes of employees who are salaried and those who are non-salaried. May 18 Order [DE 65] at 5 ("What this means is that salaried employees are not subject to Indiana's Wage Payment Act,

while non-salaried employees are.").  Powers says that this is an imprecise description of the statute's impact because it exempts not all salaried employees, but only salaried employees who are eligible for overtime under the FLSA.  However, the full text of the statute was stated in the May 18 Order in the prior sentence, and the rest of the paragraph explores the difficulties for employers in calculating payments of salaried employees *who are entitled to overtime*. *Id*.  A later section acknowledges that "some salaried employees are not exempt."  *Id*. at 7.  The clear implication was, to spell it out, that the statute placed on one side salaried employees who are eligible for overtime compensation under the Fair Labor Standards Act and on the other, employees who are either non-salaried or not eligible for overtime under the FLSA.

Reading I.C. § 22-2-5-1.1, which exempts from the Wage Payment Statute "salaried employees who are eligible for overtime under the FLSA," Powers finds six separate classifications created by the statute. She lists them as follows:

1. **Salaried exempt governed by the FLSA;**
2. **Salaried exempt not governed by the FLSA;**
3. **Salaried non-exempt governed by the FLSA;**
4. **Salaried non-exempt not governed by the FLSA;**
5. **Hourly non-exempt governed by the FLSA; and**
6. **Hourly non-exempt governed by the FLSA.**

Pl. Br. [DE 69] at 3.

A word of caution about Powers' use of the terms "exempt" and "non-exempt" in these proposed classifications.  It is not done in reference to the exemption at issue in the Wage Payment Statute.  It is apparently used to denote which employees the *FLSA* exempts from its payment regulations, including protections concerning overtime payments.  Generally speaking,

3

those executives, administrators, professionals and "outside salesmen" (as such terms are defined by the regulations) who make over a certain threshold of money are exempt from specified payment regulations in the FLSA. *See* 29 U.S.C. 213(a); 29 C.F.R. 541.1 *et. seq.*; *Haywood v. North American Van Lines, Inc.*, 121 F.3d 1066, 1069 (7th Cir. 1997).

Powers' point is that there is no rational reason for the legislature to treat her one class (salaried non-exempt employees who are governed by the FLSA) differently from the other five. Of course, if one is going beyond the straightforward language of the statute, as Powers does in creating classes based on whether employees are FLSA-exempt or not as opposed to just generally eligible for overtime under the FLSA, there really is no stopping point. She could have created a separate class for executives, one for administrators, one for outside salesmen, one for those making less than the threshold weekly amount, and on and on. The classes are more appropriately defined by what Indiana's Wage Payment Statute actually says: there are employees who are salaried and eligible for overtime under the FLSA, and there are those who are not. I.C. § 22-2-5-1.1 But regardless of how many classes are created, the possible rationales underlying the legislature's creation of the exemption remain sound.

The FLSA provided for a large regulatory framework protecting employees working throughout the nation, including Indiana. Knowing this, the Indiana legislature would be acting reasonably by crafting its Wage Payment Statute, which is concerned about the frequency and timing of employee payments, so as to fill holes left by the FLSA and to avoid unnecessary overlapping. Powers asks why, then, the legislature would only exempt salaried workers from the Wage Payment Statute's protections and not hourly ones. The answer may lie in the legislature's possible desire to motivate businesses to make more employees salaried, believing

individuals are generally better off with regular and predictable incomes. Or perhaps, as discussed extensively in the May 18 Order, it was concerned with the administrative and logistical difficulties involved for employers who would otherwise have to calculate overtime rates for salaried employees and pay the overtime in a specified time-frame. While the breakdown of a salaried employee's pay rates on an hourly basis is not an impossible task, the legislature may well have felt it was not worth tacking on this burden to an employer's already onerous slate of regulatory compliance responsibilities. This is especially true when, as Powers' herself points out, the FLSA already places burdens on the employers with respect to time-keeping procedures and overtime payments. *See* 29 U.S.C. § 211; 29 C.F.R. § 516.2.

Under *Collins,* preferential treatment must be uniformly applicable and equally available to all persons similarly situated. *Collins*, 644 N.E.2d at 80. Powers contends that because the I.C. § 22-2-5-1.1 exemption is triggered by employees eligible for overtime under the FLSA, and since the FLSA itself excludes some individuals for overtime eligibility, the I.C. § 22-2-5-1.1 exemption fails the uniformity prong of the *Collins* test. The example that Powers came up with during the first round of briefing was the FLSA's exclusion of employees of businesses with annual sales or income of less than $500,000. 29 U.S.C. 203(s)(1)(A)(i)-(ii)). That argument was dispensed with in the May 18 Order, and so now Powers raises, for the first time, the fact that FLSA also protects employees covered by "individual coverage," or those working for businesses that engage in interstate commerce. *See* 29 U.S.C. § 207(a)(1); 29 C.F.R. § 776.21(a); *Kim v. Park*, 2009 WL 1702972, at *4 (N.D. Ill. June 16, 2009). Both Powers' earlier and more recent argument strike me as complaints about the set-up of the FLSA, not the Wage Payment Statute itself. I seriously doubt that the legislature was even aware of the finer points of FLSA

individual coverage when drafting the Wage Payment Statute or its exemption.  What is likely is that the legislature was trying to fill in the holes left behind by the FLSA without unnecessarily duplicating it.  To satisfy the uniformity prong, a statute must "embrace all of the class to which it is naturally related." *Collins*, 644 N.E.2d at 79 (quoting *Dixon v. Poe*, 65 N.E. 518, 519 (Ind. 1902).  The  I.C. § 22-2-5-1.1 exemption is "naturally related" to the class of individuals covered by the FLSA.  Any carve-outs created by the FLSA will inherently fall out of reach of the exemption and be picked up within the Wage Payment Statute's scope.  Individuals will therefore be protected by one statute or the other.  This is a rational way for Indiana to go about achieving the goal of uniformly protecting employees who are unprotected by the FLSA.  The class of employees subject to the Wage Payment Statute are not "similarly situated" to those that are exempt, and so the uniformity prong is satisfied.

Perhaps, in a vacuum, Powers could convince me that the I.C. § 22-2-5-1.1 exemption is not in the best interest of Indiana.  "But a statute is not unconstitutional simply because [the Court] might disagree with the legislature about the wisdom of the statute." *Ledbettter v. Hunter*, 842 N.E.2d 810, 814 (Ind. 2006).  Powers had to "clearly overcome" the presumption of constitutionality, *see id.* at 815, and in the case of a Privileges and Immunities challenge, there was "considerable deference" owed to the legislature to begin with.  *See Collins*, 644 N.E.2d at 79-80.  She has failed to do that.

Powers claims that the May 18 Order raised arguments for the first time, specifically with respect to its position that the legislature was concerned over administrative burdens. Reply [DE 71] at 2.  She says the motion to reconsider represents her first opportunity to contemplate and address these arguments.  *Id*.  That statement is incorrect.  First, under the *Collins* test, "a

challenger must carry its burden to negate every reasonable basis for the classification."
*Ledbetter*, 842 N.E.2d at 813 (citing *Collins*, 644 N.E.2d at 81-82.   It was therefore Powers'
burden, not the Defendant's and not the Court's, to anticipate and counter all possible
explanations for the exemption, and she had to do so at the time of her initial constitutional
challenge.  Second, I very specifically raised the idea of administrative burdens at the April 9,
2009 hearing.  *See* Transcript [DE 64] at 15, 20-21.  Powers did not request at that time, or in the
period between the hearing and the issuance of the order, for leave to file additional briefing in
response to the administrative burden rationale.  Instead, she waited to see the May 18 Order,
and only then moved for reconsideration.  If anyone is guilty of moving the target it is Powers, as
she raised several points for the first time in the motion for reconsideration.  These arguments
should have been raised earlier. *See Caisse* 90 F.3d at 1269.

The May 18 Order addressed not just Defendant's judgment on the pleadings, but
Powers' motion to certify the constitutional question to the Indiana Supreme Court.  Other than
the classification and *Collins* test issues discussed above, she raises no points challenging the
denial of her certification request that were not reassertions of those made in the original
briefing.  I am still persuaded certification is inappropriate because 1) I am fairly certain in how
the Indiana Supreme Court would rule on the constitutional question; 2) the question is not one
of vital public concern; and 3) Powers chose the federal forum and granting certification would
effectively allow her to leapfrog the Indiana appellate courts. *See Brown v. Argosy Gaming Co.,*
*L.P.*, 384 F.3d 413, 416-17 (7th Cir. 2004)(listing factors used for certification questions).

Powers does add, on her motion for reconsideration, that if I am still disinclined to certify
the questions that I should decline supplemental jurisdiction and dismiss the Wage Payment

Statute claims without prejudice so that she may re-file them in state court. "Supplemental jurisdiction is a doctrine of discretion, and its 'justification lies in considerations of judicial economy, convenience and fairness to litigants.'" *Hansen v. Board of Trustees of Hamilton Southeastern School Corp.*, 551 F.3d 599, 607 (7th Cir. 2008) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966)). Declining jurisdiction at this point would be unfair as the parties have spent considerable time briefing and litigating the issues on what is now multiple occasions and because, once again, it was Powers' choice to bring suit in the federal forum. It would also be an inefficient use of judicial resources, as the factual underpinnings of the federal and state claims are close enough that it makes little sense to force a state court judge to educate himself or herself on the case when I have already climbed the learning curve.

**CONCLUSION**

For the foregoing reasons, Powers' Motion for Reconsideration [DE 68] is **DENIED**.

**SO ORDERED**.

ENTERED: December 1, 2009

<div style="margin-left:40%">

s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT

</div>