# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | | |
|---|---|---|
| BRANDI POWERS on Behalf of Herself And All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:08-cv-208-PPS |
| CENTENNIAL COMMUNICATIONS CORP., | ) ) ) | |
| Defendant. | ) ) | |

## OPINION AND ORDER

Defendant Centennial Communications Corp. seeks reconsideration of my December 14, 2009 Order [DE 73] granting in part Plaintiff Brandi Powers' motion for certification. Specifically, Centennial asks me to reconsider the definition of the following class I certified for collective action status under the Fair Labor Standards Act (FLSA):

> All future, present and former Inside Sales Representatives of Centennial Communications Corp. who have worked overtime hours which should have been paid on or after September 11, 2005.

[DE 73.] Centennial seeks reconsideration of this definition for two reasons. First, it contends that the class should be limited to Inside Sales Representatives (ISRs) who received overtime adjustments payments. Second, Centennial contends that the class improperly includes ISRs whose potential FLSA claims are time-barred. I agree with Centennial in both respects and therefore grant the motion to reconsider.

1

**DISCUSSION**

A motion to reconsider is appropriate where: "(1) the court has patently misunderstood a party; (2) the court has made a decision outside the adversarial issues presented to the court by the parties; (3) the court has made an error not of reasoning but of apprehension; (4) there has been a controlling or significant change in law since the submission of the issues to the court; or (5) there has been a controlling or significant change in the facts since the submission of the issue to the court." *Orange v. Burge*, 451 F. Supp. 2d 957, 961 (N.D. Ill. 2006) (*citing Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990)). Motions for reconsideration are not vehicles for "rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996).

I.   **Description of Potential Opt-In Plaintiffs**

Centennial contends that the class definition's reference to all ISRs "who have worked overtime hours which should have been paid" is too broad. Def's Mot. to Reconsider [DE 81] at 6-7. Centennial argues that the class should be limited to ISRs who were paid overtime *adjustments* during the relevant period. Centennial reasons that the class was certified on the basis of Powers' "late payment" claim, and an ISR who was not paid an overtime adjustment would not have such a claim. *Id*.

This is an argument Centennial could have raised in its brief in opposition to Powers' motion to certify. After all, the class this Court certified for collective action status employs the same definition proposed by Powers in her memorandum supporting her motion to certify. Pl's Mem. [DE 10] at 6. Centennial is, nonetheless, correct that the class definition is too broad, in light of the limited "late payment" basis on which I granted certification. Moreover, Powers

agrees that ISRs who worked overtime, but did not earn commissions in the corresponding month, should not be included in the class definition. Pl.'s Resp. [DE 84] at 5. Accordingly, I am inclined to narrow the class pursuant to my discretion regarding the disposition of motions for reconsideration. *Caisse Nationale de Credit Agricole*, 90 F.3d at 1270.

The December 14, 2009 Order permits Powers to enact the opt-in notification stage for her FLSA claim "based upon untimely overtime adjustment payments" [DE 73]. As noted in that order, ISRs receive overtime adjustment payments only after Centennial calculates the commissions on which those adjustments are based. I permitted Powers to enact the opt-in notification stage for her FLSA claim because she had shown that the delay between Centennial's commission payments and its subsequent payments of corresponding overtime adjustments may violate the FLSA's prompt payment requirement. The current class definition, however, extends too far, encompassing all ISRs who are eligible for payments based on overtime hours.

To remedy this overbreadth, Centennial proposes limiting the class to ISRs "who have been paid overtime adjustments based on their commission advances." Def.'s Mot. to Reconsider [DE 81] at 2. I agree. Powers objects that this would exclude potential opt-in plaintiffs who were eligible for overtime adjustment payments during the relevant period, but were never paid. Pl.'s Resp. [DE 84] at 5. But I have already denied certification of Powers' "failure to pay" claim [DE 73]. So excluding such ISRs from the class is consistent with the limited "late payment" basis on which I granted certification.

Finally, Centennial and Powers agree that the class should not extend to future ISRs, and suggest that the class therefore be closed as of the date notice is issued. Accordingly, I will incorporate the parties' stipulations on those issues into the amended class definition detailed

below.

## II. Statute of Limitations

The next issue concerns the statute of limitations. Centennial asks me to amend the cut-off date for the class from September 11, 2005 to January 15, 2007, to reflect the statutory limitations period. Centennial argues that the current cut-off date needs to be adjusted to take account of the passage of time between the filing and resolution of the motion for class certification. Centennial appears to seek this relief on the ground that the passage of time constitutes a change in the facts of the case. Factual changes may be a proper ground for reconsideration. *Orange*, 451 F. Supp. 2d at 961. And the fact that the current cut-off date permits opt-ins whose potential FLSA claims are time-barred warrants reconsideration here.

An individual may bring a claim under the FLSA for unpaid overtime wages within two years from the date the claim accrues, or within three years of that date if the violation was willful. *See* 29 U.S.C. § 255(a).[1] Unlike a Rule 23 class action, each potential plaintiff in an FLSA collective action must provide a written affirmative consent to become a party to the action. *See Harkins v. Riverboat Servs. Inc.*, No. 99 C 123, 2002 WL 32406581, at *2 (N.D. Ill. May 17, 2002). Moreover, the statute of limitations for each potential plaintiff continues to run until that plaintiff affirmatively opts-in to the suit. 29 U.S.C. § 256(b); *see also Threatt v. Residential CRF, Inc.*, No. 1:05-CV-117, 2005 WL 2454164, at *3 (N.D. Ind. Oct. 4, 2005).

Powers filed her complaint on September 11, 2008. In her October 20, 2008 motion for certification of a collective action [DE 9], Powers sought a September 11, 2005 cut-off date for the proposed class—three years prior to the date she filed her complaint. I adopted that cut-off

---

[1] FLSA claims accrue at each regular payday immediately following the work period during which the services, for which compensation is sought, were rendered. *See Angulo v. The Levy Co.*, 568 F. Supp. 1209, 1215 (N.D. Ill. 1983) *aff'd sub nom. Flores v. Levy Co.*, 757 F.2d 806 (7th Cir. 1985).

date in my December 14 Order. But Centennial correctly notes that potential opt-in claims accruing between September 11, 2005 and three years before the filing of an opt-in consent form will be time-barred by 29 U.S.C. § 255(a)'s three-year limitations period. Centennial's proposed new cut-off date—January 15, 2007—is three years before Centennial filed its January 15, 2010 motion to reconsider [DE 81]. I therefore agree with Centennial that the cut-off date should be amended to reflect the three-year limitations period that applies to claims for willful FLSA violations. Moreover, Centennial notes, and Powers does not dispute, that no potential opt-in plaintiffs had filed affirmative consents as of the date that Centennial filed its motion to reconsider [DE 81].

Powers responds that I should extend the opt-in time by equitably tolling the statute of limitations for potential opt-ins. But equitable tolling is only appropriate under extraordinary circumstances. *See Washington v. Walker*, 734 F.2d 1237, 1240, n.4 (7th Cir. 1984) (equitable tolling possible to the extent prospective class members relied on filing of suit, rather than pressing their claims as individuals) (citing *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 552-56 (1973)); *see also Partlow v. Jewish Orphans' Home of Southern California, Inc.*, 645 F.2d 757, 760-61 (9th Cir. 1981) (tolling statute of limitations where plaintiff's counsel inappropriately solicited opt-in consent forms, to allow affected plaintiffs to remedy invalid consents), *abrogated on other grounds by Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989). For example, tolling is appropriate where "it would have been impossible for a reasonably prudent person to learn of the cause of action . . . or if the defendant concealed from the plaintiff the existence of the cause of action." *Hosking v. New World Mortgage, Inc.*, 602 F. Supp. 2d 441, 448 (E.D.N.Y. 2009) (quotation marks and citation omitted).

Powers first contends that equitable tolling is warranted due to the time it took the Court

5

to decide Powers' motion for class certification.  But nothing prevented potential opt-in plaintiffs from filing a claim while the motion was under consideration.  Notably, Powers fails to point to any potential opt-in plaintiffs who would have timely opted-in had the Court resolved the motion to certify sooner.  And, as noted in the December 14 Order, nothing prevented Powers from speaking with fellow employees to determine whether they were similarly situated to her [DE 73].  Powers fails to cite to any appellate court authority that authorizes equitable tolling in a collective action due to a supposed delay in ruling on a motion for certification.  I am, therefore, not persuaded that this case presents the extraordinary circumstances needed to justify tolling.

Powers does cite to *Owens v. Bethlehem Mines Corp.*, 630 F. Supp. 309 (S.D. W. Va. 1986), for the proposition that equitable tolling applies where potential opt-in claims are time-barred due to a delay in deciding a motion to certify.  Pl.'s Resp. [DE 84] at 3.  But *Owens* is distinguishable.  *Owens* tolled the limitations period for an ADEA action to allow two plaintiffs to opt-in.  *Owens*, 630 F. Supp. at 312-13.  *Owens* reasoned that the parties had not contributed to the over seventeen-month delay in ruling on the plaintiff's motion to certify, and concluded that the opt-ins would have timely filed had the court issued an earlier decision.  *Id*.  But unlike the *Owens* plaintiff, Powers herself contributed to the fourteen-month time period preceding the Court's resolution of her motion to certify, in part through her motion to certify a question of state law to the Indiana Supreme Court [DE 33], and also due to her motion for reconsideration [DE 68].  And, as noted, Powers provides no reason to conclude, as *Owens* did, that an earlier decision on the motion to certify would have allowed time-barred plaintiffs to opt-in.

Powers next argues that tolling is justified because of the difficulty of discovering that an employer could be liable under the FLSA for late overtime payments.  Pl.'s Resp. [DE 84] at 4.  I disagree.  Equitable tolling may permit an extension of time within which a plaintiff may sue if

it would have been unreasonable to expect him to sue earlier. *See Mitchell v. Donchin*, 286 F.3d 447, 451 (7th Cir. 2002). But I am not persuaded by Powers' assertion that "only an attorney or employee of the Department of Labor" would have reason to learn of potential late overtime payment claims under the FLSA. Pl.'s Resp. [DE 84] at 4. Most employees know when their employer is cheating them on overtime. And, in any event, ignorance of proper legal procedures is not sufficiently extraordinary to warrant tolling. *See Arrieta v. Battaglia*, 461 F.3d 861, 867 (7th Cir. 2006) ("Mistakes of law or ignorance of proper legal procedures are not extraordinary circumstances warranting invocation of the doctrine of equitable tolling.").

I am also not persuaded by Powers' contention that Centennial's refusal to produce class-wide discovery justifies tolling. As noted in the December 14 Order, Powers never challenged Centennial's refusal to produce class-wide discovery until after the resolution of the motion for certification. In particular, Powers never moved to compel the production of a list of ISRs who received overtime adjustment payments during the relevant period. Nor does she contend that Centennial's failure to produce contact information for potential class members interfered with her learning the identities of those individuals.[2]

## CONCLUSION

For the foregoing reasons, Defendant Centennial's Motion for Reconsideration and Clarification [DE 81] is **GRANTED** as described in this order. The class definition set forth in this Court's December 14, 2009 order [DE 73] is hereby **AMENDED** as follows:

> All present and former Inside Sales Representatives of Centennial Communications Corp. who received overtime adjustment payments, based on

---

[2] Because I decline to toll the limitations period, I need not resolve Centennial's argument on reply [DE 86] that Powers lacks standing to argue that tolling should apply to the claims of potential opt-in plaintiffs.

commission advances from Centennial, at any time between January 15, 2007 and the date on which the Court approves Plaintiff's proposed class notification.

**SO ORDERED**

Entered: February 26, 2010

/s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT